PATRICK GORMAN *vs.* ROBERT E. BUDLONG.

PROVIDENCE—JULY 9, 1901.

PRESENT: Stiness, C. J., Tillinghast and Rogers, JJ.

(1) *Negligence.  Injuries received en ventre sa mere.  Actions.  Survival.*

As no action can be maintained by a person for injuries received by him while *en ventre sa mere,* his next of kin cannot, under Gen. Laws cap. 233, § 14, maintain an action therefor after his death.

TRESPASS ON THE CASE for negligence.    The facts are fully stated in the opinion.    Heard on demurrer to declaration, and demurrer sustained.

ROGERS, J.    The case is before us upon demurrer to the plaintiff's declaration.    It is an action of trespass on the case for negligence brought by the plaintiff as father and next of kin of Patrick Gorman, Junior, and the facts, as alleged, are that the plaintiff was a tenant from week to week of a tenement of the defendant; that the plaster of the ceiling of the kitchen in said tenement became loose and liable to fall; that on or about November 15, 1900, and again on or about December 1, 1900, the plaintiff notified the defendant, his agents and servants, of the defective and dangerous condition of said ceiling; that in consideration that said plaintiff and the members of his family would continue in said tenement as his tenants, and in consideration that said plaintiff would and did continue to pay, or become liable to pay, the weekly rent for the same, as he had previously been accustomed to do, said defendant, his agents and servants, promised to have said tenement repaired, and said ceiling replastered, so as to make the same safe for said plaintiff and the members of his family to live in, and not subject him, them or any of them, to great danger of serious injury; whereupon it became and was the duty of said defendant to make or cause to be made the repairs necessary to make said tenement safe for said plaintiff and the members of his family to live in, and not subject him, them or any of them to great danger of serious injury, and to put

said tenement in a tenantable condition, yet said defendant, in violation of his said duty, wholly neglected to make said necessary repairs, and that thereafterwards on to wit, January 22, 1901, in consequence of said defendant's neglecting to make said necessary repairs, said ceiling fell upon Eliza Gorman, the plaintiff's wife, while she was engaged in her household duties and in the exercise of due and reasonable care and caution on her part, severely injuring and bruising her, and that from and on account of the injuries and shock occasioned by said ceiling falling upon her, the said Eliza Gorman was caused to give birth to a child prematurely, which said child afterwards on to wit, January 25, 1901, on account of said premature birth, died; that on account of said premature birth of said child and the weakness and illness resulting therefrom said plaintiff was obliged to and did pay, lay out and expend large sums of money to wit, the sum of ———— dollars, for medical attendance and nursing and medicines in the proper care and treatment of said child; that on account of said death of said child occasioned as aforesaid, said plaintiff was obliged to and did pay, lay out and expend large sums of money, to wit the sum of ———— dollars, in the burial of said child and other necessary funeral expenses; to the plaintiff's damage $5,000, etc.

(1)     The action was brought to recover for the death of the child under Gen. Laws R. I. cap. 233, § 14, which is as follows, viz.:

"SEC. 14. Whenever the death of a person shall be caused by the wrongful act, neglect, or default of another, and the act, neglect, or default, is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then, and in every such case, the person who, or the corporation which, would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to a felony. Every such action shall be brought by and in the name of the executor or administrator of such deceased person, whether ap-

pointed or qualified within or without the state, and the amount recovered in every such action shall one-half thereof go to the husband or widow, and one-half thereof to the children of the deceased, and if there be no children the whole shall go to the husband or widow, and if there be no husband or widow, to the next of kin, in the proportion provided by law in relation to the distribution of personal property left by persons dying intestate : *Provided*, that every such action shall be commenced within two years after the death of such person.   If there is no executor or administrator, or if, there being one, no action is brought in his name within six months after the death, one action may be brought in the names of all the beneficiaries, either by all, or by part stating that they sue for the benefit of all, and stating their respective relations to the deceased : *Provided*, that if all do not bring such suit, only those bringing it shall be responsible for costs ; but judgment shall be for the benefit of all, and shall be entered as several judgments for each in his proportion as aforesaid, and executions thereon shall issue in favor of each respectively : *Provided, further*, that if such action shall be brought by the beneficiaries, no action shall thereafter be brought by the executor or administrator.   There shall be but one bill of costs in favor of the plaintiffs, which shall enure equally for the benefit of those bringing the suit, and of them only."

The defendant demurred to the declaration which consists of one count only, on the following grounds, viz.:   1. That the plaintiff's intestate could not have maintained an action for damages against the defendant, had he survived, and therefore the plaintiff in this case has no right of action against said defendant.   2. That said action is improperly brought under chapter 233, section 14, of the General Laws. 3. That said plaintiff's intestate, not being recognized by the law as a person capable of having a standing in court cannot be represented by the plaintiff in this case.   4. That said plaintiff, who sues in his representative capacity as next of kin of Patrick Gorman, Junior, seeks to recover for money expended in his individual capacity.

Inasmuch as to enable the plaintiff to recover, the act, neglect or default must have been such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, the question at once presenting itself is, can one maintain an action for injuries received by him while in his mother's womb.

The plaintiff has prepared an ingenious brief and lays great stress upon the acts an unborn child can do, citing many authorities, and seeking by analogy to reach the conclusion to which he would have the court arrive. Unquestionably, an unborn child has many rights and privileges, but it matters not what rights and privileges it has if it had not the right, had it lived, to maintain an action for the injury alleged to have been suffered in this case.

In *Walker* v. *Great Northern Ry. Co.*, 28 L. R. Ir. 69, decided in 1891, the plaintiff, an infant of a few months of age, brought an action for personal injuries against the defendant for injuries sustained by her while *en ventre sa mere*, whereby she was permanently crippled and deformed. The child's mother was a passenger on the defendant's railroad and suffered injuries during her pregnancy and brought action and recovered damages for her own injury. The infant plaintiff also brought suit which is the one referred to. The case was learnedly argued and considered, and the judges delivered their opinions *seriatim*, and were unanimous that the action could not be maintained. The question, however, whether such an action could be maintained under any circumstances by an infant who was in its mother's womb at the time of the alleged injury, was discussed elaborately and with great learning both by court and counsel. O'Brien, C. J., after discussing the question, expressly declined to commit himself, leaving it as far as he was concerned "an open question." The other judges treated the matter in a broader and more comprehensive manner. Johnson, J., discussed the matter with great affluence of learning, and said, on p. 84, *inter alia:* "As matter of fact, when the act of negligence occurred the plaintiff was not *in esse*, was not a person, or a passenger, or a human being. Her age and her

existence are reckoned from her birth, and no precedent has
been found for this action.    Lord Coke says : ' Although *filius
in utero matris est pars viscerum matris*, yet the law in
many cases hath consideration of him in respect of the ap-
parent expectation of his birth :' *Earl of Bedford's Case*,
7 Rep. 8 b.    This imputed existence *in esse* to an unborn
child is a fiction of the civil law, which regards an unborn
child as born for some (not for all) purposes connected with
the acquisition and preservation of real or personal prop-
erty. . . . Thus it would appear that according to this
fiction an unborn child may in the civil law at the same
moment be regarded as *in esse* and not *in esse;* for its
own benefit *in esse*, to its prejudice not *in esse;* and un-
less for the benefit of itself not *in esse*.    As the civil law
prevailed in the Ecclesiastical and Admiralty Courts, and
also entered largely into the jurisprudence administered in
the Court of Chancery, most of the authority by which an
unborn child is for its own benefit regarded as born is to be
found in the decisions of those courts."    After referring to a
number of authorities he proceeds as follows, p. 87 : " These
authorities appear to me to show that the doctrine which
regards an unborn child as born for its own benefit (which is
the utmost limit of the doctrine), is a fiction adopted from
the civil law by the courts of equity, for some, but not for
all, purposes, and far more seldom recognized in the courts of
law.    The present is and always was a common law action
for personal injuries caused by the negligence or breach of
duty of the defendants, and it lies on the plaintiff to show
what was this duty of the defendants towards the plaintiff,
and how it arose.    Negligence and duty are respectively rela-
tive, not absolute terms.    It is not contended that the duty
arose out of contract ; the contract was between the defend-
ants and Mrs. Walker, and so far as contract is concerned it
was to Mrs. Walker the defendants were liable for breach of
it.    If it did not spring out of contract it must, I apprehend,
have arisen (if at all) from the relative situation and circum-
stances of the defendants and plaintiff at the time of the
occurrence of the act of negligence.    But at that time the

plaintiff had no actual existence; was not a human being; and was not a passenger—in fact, as Lord Coke says, the plaintiff was then *pars viscerum matris*, and we have not been referred to any authority or principle to show that a legal duty has ever been held to arise towards that which is not *in esse* in fact and has only a fictitious existence in law, so as to render a negligent act a breach of that duty." As to analogies drawn from the criminal law, the learned judge says, p. 88: "Then it is contended that this action lies in analogy to the criminal law, that if a child born alive afterwards dies of injuries received while *in utero*, this is murder in the person who inflicted them (1 Russ. c. 2, 5th ed. 646, note *e*); but I think that there is no true analogy between crime and tort in this case. Crimes are offences against the public; they are those acts or attempts which tend to the prejudice of the whole community, and as a general rule the criminal intent and the act charged to be criminal must concur to constitute a crime. Tort, on the other hand, is a private wrong sustained by some person or body of persons. The sanction of the one is punishment; the result of the other is compensation. . . . In early times, the criminal law as to the infant *in utero*, just born alive, was far more stringent and severe, as stated by Bracton, than it is at present. . . . This may be accounted for on principles of public policy by the stern severity of the criminal law in the supreme exigencies of public safety, where the offence is prosecuted by the Crown on behalf of the entire community, for the security of society, the preservation of infant life, and the Queen's peace, in order that (as Lord Coke says, 3 Inst. 50), 'so horrible a crime should not go unpunished.'"

In *Dietrich, Admr., v. Northampton*, 138 Mass. 14, decided in 1884, the mother of the deceased slipped upon a defect in a highway of the defendant town, fell, and had had a verdict for her damages. At the time, she was between four and five months advanced in pregnancy, the fall brought on a miscarriage, and the child, although not directly injured, unless by a communication of the shock to the mother, was too little advanced in foetal life to survive its premature birth. There

was testimony, however, based upon observing motion in its limbs, that it did live for ten or fifteen minutes. Administration was taken out, and the administrator brought action upon the Public Statutes of Massachusetts, c. 52, § 17, for the further benefit of the mother in part or in whole, as next of kin. The court speaking through Holmes, J., in delivering the opinion, says: "The court below ruled that the action could not be maintained; and we are of the opinion that the ruling was correct. . . . Some ancient books seem to have allowed the mother an appeal for the loss of her child by a trespass upon her person. . . . But no case, so far as we know, has ever decided that, if the infant survived, it could maintain an action for injuries received by it while in its mother's womb. Yet that is the test of the principle relied on by the plaintiff, who can hardly avoid contending that a pretty large field of litigation has been left unexplored until the present moment." After considering various cases and arguments the learned judge concludes as follows: "Taking all the foregoing considerations into account, and further, that, as the unborn child was a part of the mother at the time of the injury, any damage to it which was not too remote to be recovered for at all was recoverable by her, we think it clear that the statute sued upon does not embrace the plaintiff's intestate within its meaning; and have not found it necessary to consider the question of remoteness or the effect of those cases which declare that the statute liability of towns for defects in highways is more narrowly restricted than the common law liability for negligence."

In *Allaire* v. *St. Luke's Hospital*, 184 Ill. 359, decided in 1900, the plaintiff, an infant of tender age, brought suit by his next friend against the defendant for injuries sustained while in the womb of his mother alleged to have been caused by the negligence of the defendant in an elevator accident on February 2, 1896, whereby the mother was much injured, and thereby the plaintiff was also greatly injured, so that when said plaintiff was born on February 6, 1896, he was permanently crippled and deformed. The mother settled

with the defendant for a valuable consideration, and in the suit brought by the plaintiff, the defendant filed a general demurrer which was sustained by the trial court.    Upon an appeal to the Appellate Court of the First District the judgment of the lower court was affirmed (reported in 76 Ill. Ap. 441), and from that judgment of affirmance, appeal was taken to the Supreme Court of the State.    The opinion of the Appellate Court which was adopted by the Supreme Court concluded as follows :  " The doctrine of the civil law and the ecclesiastical and admiralty courts, therefore, that an unborn child may be regarded as *in esse* for some purposes, when for its benefit, is a mere legal fiction, which so far as we have been able to discover, has not been indulged in by the courts of common law to the extent of allowing an action by an infant for injuries occasioned before its birth.    If the action can be maintained, it necessarily follows that an infant may maintain an action against its own mother for injuries occasioned by the negligence of the mother while pregnant with it.    We are of the opinion that the action will not lie."

The counsel for the plaintiff has called our attention to Gen. Laws R. I. cap. 203, § 23, which provides that a child of a testator born after his father's death, for whom no provision was made by his father by will or otherwise, shall take the same share of his father's estate that he would have been entitled to if his father had died intestate ; and also to chapter 210, section 21, by which it is provided that in proceedings in the Probate Court the interests of a person unborn may be represented by a guardian *ad litem* or next friend to be appointed by the court.    These statute provisions, however, furnish no analogies for guidance in the case at bar, in our opinion, for a statute only governs the cases to which it was designed to apply, and if chapter 233, section 14, under which this action was brought was intended to apply to injuries to unborn infants, such intention should have been expressed in its provisions.

The statute in question is drawn from an English statute, Lord Campbell's Act, 9 and 10 Vict. c. 93, s. 1, and the English common law is the foundation of our system of jurispru-

dence, and for those feeling there is a hardship in the principle of law as hereinbefore laid down, as an occasional dissenting judge has expressed himself as feeling, we borrow these words of Mr. Associate Justice O'Brien, in *Walker* v. *Great Northern Ry. Co.*, *supra*, viz.: " We have to see whether the right claimed exists in the English legal system, or flows out of any admitted principles in that system. The law is in some respects a stream that gathers accretions with time from new relations and conditions. But it is also a landmark that forbids advance on defined rights and engagements ; and if these are to be altered, if new rights and engagements are to be created, that is the province of legislation and not of decision."

In our opinion one cannot maintain an action for injuries received by him while in his mother's womb, and consequently his next of kin under the statute after his death cannot maintain an action therefor, and so the demurrer must be sustained on this ground.

As sustaining the demurrer on this ground is conclusive against maintaining the action it is unnecessary to consider what damages could have been obtained were the suit maintainable.

Demurrer sustained and case remitted to the Common Pleas Division with directions to enter judgment for the defendant for costs.

*Leonard W. Horton*, for plaintiff.

*Frederick A. Jones*, for defendant.