220 A.2d 222.

DAVID SYLVIA *vs.* ALFRED B. GOBEILLE.
KRISTY SYLVIA, *p.p.a. vs.* ALFRED B. GOBEILLE.

JUNE 17, 1966.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

JOSLIN, J.   These companion actions of trespass on the case for negligence, one by a minor suing through her father and next friend and the other by the father for consequential damages, were commenced in the superior court prior to the January 10, 1966 effective date of its revised Rules of Civil Procedure.   The trial justice who heard the cases after those rules took effect acting pursuant thereto treated the defendant's demurrers to the declarations as if they were motions to dismiss.   She granted the motions, dismissed the actions and thereafter in each case a judgment on her decision was entered for the defendant.   It is from those judgments that these appeals are here.

The issue is whether causes of action accrue to this minor

child and her father, she having allegedly been born with certain physical defects by reason of defendant's having negligently failed to prescribe gamma globulin for the mother during her pregnancy notwithstanding his knowledge of her exposure to German measles.

In *Gorman* v. *Budlong,* 23 R. I. 169, we followed *Dietrich* v. *Inhabitants of Northampton,* 138 Mass. 14, decided in 1884. In that case the Massachusetts court, speaking through Justice Holmes, denied recovery to an administrator suing on behalf of a prematurely-born child for injuries sustained while a nonviable infant in his mother's womb. The court theorized that a child during pregnancy was an integral part of its mother rather than a separate entity, and that not being a person *in esse* it had no rights and that no cause of action could accrue in its favor.

*Dietrich* was the landmark case to which courts turned when prenatal-injury cases arose and, at least until recently, it was generally followed and the view prevailed in this country that a child could not maintain an action for injuries sustained prior to birth. While the *Dietrich* rationale that no legal duty is owed to a person not in existence was the principal reason advanced by the courts for denying the child a remedy for the wrong, they also said that to recognize a cause of action for prenatal injuries where obviously the difficulty of establishing a causal relationship between the conduct and injury was great would give rise to fictitious claims.

The departure from the *Dietrich* rule came in 1946 in *Bonbrest* v. *Kotz,* 65 F. Supp. 138, where it was held that a child could maintain an action for prenatal injuries sustained through alleged malpractice as it was taken from the mother's womb. Since *Bonbrest,* in an almost unbroken line of decisions the courts have rejected the arguments once relied upon and have said that a cause of action accrues for prenatal injuries. Where once they rec-

ognized a child's legal existence while *en ventre sa mere* in the criminal law and with respect to his property rights and his right to inherit but denied it for purposes of allowing suit for prenatal injuries, they now extend that recognition to the field of torts. They answer the sugestion that such an extension may encourage false claims by saying that the issue of a causal connection between the injury to the unborn child and the negligence of another is one of proof which differs, if at all, only in degree from other medical questions which daily arise in negligence cases.

We do no more than summarize the more cogent reasons given by the judges and text writers both for the earlier and the modern rule. More is unnecessary because the arguments pro and con are set out at length in the authorities which are collected in 10 A.L.R.2d 1059, 27 A.L.R.2d 1256, as well as in Prosser, Torts (3d ed.) §56 at 354, and 2 Harper & James, Torts §18.3 at 1029 (1956).

We overrule *Gorman* v. *Budlong, supra,* to the extent that it stands for the principle that there may be no recovery for prenatal injuries. We do this in part because we believe that the law in this state should be harmonious with that which now generally prevails elsewhere. This is a consideration which influenced the Massachusetts court in *Keyes* v. *Construction Service, Inc.,* 340 Mass. 633, 637, where it held that a cause of action accrued to a child born alive for injuries sustained when viable in his mother's womb and in so doing, although it may not have reversed, it at least confined *Dietrich* v. *Inhabitants of Northampton, supra,* to its facts. More importantly, however, we act for the reason that we deem it fitting and proper to protect a child's right to commence life unhampered and unimpaired by damage negligently caused to his body or mind by another.

There still remains the problem of whether the right to sue should turn on the child's viability at the time the in-

jury occurred. That problem exists because there is a view that recovery may be had only for injuries sustained after a child becomes viable. For a child to be viable means that it is so far developed and formed that if then born it could exist outside of its mother's womb even if only in an incubator, and the term viability refers to that period in a child's fetal development when it becomes capable of independent life. In our judgment there is no sound reason for drawing a line at the precise moment of the fetal development when the child attains the capability of an independent existence, and we reject viability as a decisive criterion.

While we could, as has sometimes been done elsewhere, justify our rejection of the viability concept on the medical fact that a fetus becomes a living human being from the moment of conception, we do so not on the authority of the biologist but because we are unable logically to conclude that a claim for an injury inflicted prior to viability is any less meritorious than one sustained after. In our view, subject always, however, to Prosser's caution, *supra*, at 357, that there must be reliable proof of causation, "justice requires that the principle be recognized that a child has a legal right to begin life with a sound mind and body," and that "If the wrongful conduct of another interferes with that right, and it can be established by *competent proof* that there is a causal connection between the wrongful interference and the harm suffered by the child when born, damages for such harm should be recoverable by the child." (italics ours) *Smith* v. *Brennan,* 31 N. J. 353, 364.

With us the test will not be viability but causation, and our inquiry will be whether the damage sustained is traceable to the wrongful act of another. Our conclusion is in line with the recent decisions. *Sinkler* v. *Kneale,* 401 Pa. 267; *Kelly* v. *Gregory,* 282 App. Div. (N.Y.) 542; *Hornbuckle* v. *Plantation Pipe Line Co.,* 212 Ga. 504; *Bennett* v. *Hymers,* 101 N. H. 483; *Puhl* v. *Milwaukee Automobile Ins. Co.,* 8 Wis.2d 343; *LaBlue* v. *Specker,* 358 Mich. 558.

Because the injured child in the instant cases is in being, we do not reach the problem, more troublesome perhaps than that of viability, of whether a child must be born alive in order to maintain an action for injuries sustained while *en ventre sa mere*. We decide only the issue before us and we hold that a child born alive has a right of action in tort against a negligent wrongdoer for prenatal injuries.

For the reasons indicated the plaintiff's appeal in each case is sustained, and each case is remitted to the superior court for further proceedings.

*Corcoran, Peckham & Hayes, Patrick O'N. Hayes,* for plaintiffs.

*Francis V. Reynolds, Paul V. Reynolds,* for defendant.