DECISION
This action arises out of the death by suicide of Rebecca Calderone in December 1999 that plaintiffs claim was proximately caused by the years of sexual abuse allegedly perpetrated upon her by her pediatric neurologist, defendant Dr. Taranath M. Shetty. The defendants, Dr. Taranath M. Shetty and Taranath M. Shetty, M.D., Inc., have filed a motion for summary judgment that asks this Court to decide an issue of first impression in Rhode Island: namely, whether an action for wrongful death brought by a decedent's estate and heirs against the defendants under the Rhode Island Wrongful Death Act, R.I. Gen. Laws §§ 10-7-1 etseq., is barred as a matter of law if the decedent's action against the defendants would have been time barred as of the date of her death. The motion also seeks, on statute of limitation grounds, to dismiss the claims of Rebecca Calderone's parents against the defendants for fraudulent concealment of the alleged assaults and fraudulent misrepresentation with regard to their daughter's treatment.
For the reasons set forth in this decision, this Court holds that neither the plaintiffs' claims under the Rhode Island Wrongful Death Act (counts I, II and V of the complaint) nor their fraud claims (count IV of the complaint) are barred by the applicable statutes of limitation. Accordingly, this Court denies the defendants' motion for summary judgment as to all pending counts of plaintiffs' complaint.[1]
 Facts and Procedural History
As all parties acknowledge, the defendants' motion for summary judgment raises legal, rather than factual, questions. The defendants thus implicitly accept, for present purposes, plaintiffs' recitation of the facts as contained in their complaint and the discovery attached to their memorandum in support of their objection to defendants' motion for summary judgment. It is those allegations, therefore, when viewed in a light most favorable to plaintiffs, as the non-moving parties, that will frame this Court's consideration of the legal issues raised by defendants' summary judgment motion.
The plaintiffs consist of Rebecca Calderone's parents, George and Joan Sanzi, who have brought suit individually and as co-administrators on behalf of the estate of Rebecca Calderone, as well as the decedent's ex-husband, Dennis Calderone, who has brought suit on behalf of her children, Ryan and Joseph Calderone. Plaintiffs allege that Dr. Taranath Shetty, while serving as Rebecca Calderone's pediatric neurologist, sexually assaulted and battered her during office visits from about March of 1979, when she was fourteen years old, until about March of 1987, when she was twenty-two years old. Plaintiffs George and Joan Sanzi further allege that upon Dr. Shetty's recommendation, they allowed their daughter to work in his office on Saturdays from approximately March 1979 until March 1981, on which days Dr. Shetty further sexually abused her.
In 1986, Rebecca Calderone married Dennis Calderone and later gave birth to twin boys (Ryan T. Calderone and Joseph G. Calderone). During their marriage, Rebecca Calderone disclosed to her husband that she was sexually abused by Dr. Shetty. In February of 1988, Rebecca Calderone began outpatient therapy with Kevin Dealy, a licensed social worker. In March of 1988, she disclosed to Mr. Dealy that an "employer" had sexually abused her as a teenager. Later that same year, Rebecca Calderone was admitted to Butler Hospital where she disclosed that her neurologist had sexually abused her when she was fourteen years old. Also in 1988, Rebecca Calderone separated from her husband. Beginning in November of 1992 and continuing until 1996, Rebecca Calderone treated with Lynn Pasquale, another licensed social worker. During her treatment, she disclosed the alleged sexual abuse.
On February 7, 1996, the Sanzis accompanied their daughter to see an attorney. The Sanzis contend that it was at this meeting that they first became aware of Dr. Shetty's alleged abuse of their daughter. In 1999, Rebecca Calderone was admitted to Butler Hospital on three separate occasions for suicidal tendencies. Tragically, however, on December 21, 1999, Rebecca Calderone committed suicide. Eight months later, on August 24, 2000, plaintiffs filed their complaint against the defendants alleging that it was as a direct and proximate result of Dr. Shetty's sexual abuse of her that Rebecca Calderone took her own life.
In count I of the complaint, plaintiffs assert causes of action against defendant Dr. Shetty under the Rhode Island Wrongful Death Act, R.I. Gen. Laws §§ 10-7-1 et. seq., for tortious battery. Specifically, plaintiffs George and Joan Sanzi, as co-administrators of their daughter's estate, seek pecuniary damages on behalf of the statutory beneficiaries of Rebecca Calderone, pursuant to R.I. Gen. Laws § 10-7-1.1, as well as damages for pain and suffering on behalf of the estate, pursuant to R.I. Gen. Laws § 10-7-7. Also in count I, Rebecca Calderone's children, Ryan and Joseph Calderone, through their father, Dennis Calderone, seek damages under the Rhode Island Wrongful Death Act for the loss of their mother's consortium, pursuant to R.I. Gen. Laws §10-7-1.2(b).
In count II of the complaint, plaintiffs assert causes of action against defendant Dr. Shetty under the Rhode Island Wrongful Death Act for the intentional infliction of emotional distress upon the decedent, Rebecca Calderone. In this count, they seek to recover the same kinds of damages under the same provisions of the Rhode Island Wrongful Death Act as asserted in count I.
As noted previously with respect to count III of the complaint, the parties have stipulated that the individual claims of plaintiffs George and Joan Sanzi for intentional infliction of emotional distress may be dismissed with prejudice. There are no allegations in that count, therefore, that are relevant to this Court's consideration of defendants' motion for summary judgment.
In count IV of the complaint, plaintiffs George and Joan Sanzi, in their individual capacities, allege that defendant Dr. Shetty fraudulently induced them to allow their then minor-aged daughter to work with him so that he could sexually assault her and that he fraudulently concealed his alleged sexual assaults of her by telling them that her behavioral changes were due to a neurological disorder and/or her medication. They seek to recover compensatory damages for the economic harm and emotional distress they claim they sustained as a proximate result of the defendant's misconduct. They also seek to recover punitive damages.
Finally, in count V of the complaint, plaintiffs assert causes of action against defendant Taranath M. Shetty, M.D., Inc. under a theory ofrespondeat superior. They allege that the corporate defendant, as employer of defendant Dr. Shetty, is liable for all of the tortious misconduct of Dr. Shetty and damages alleged in the prior counts of their complaint that they claim took place in the course of his employment.
The defendants filed a motion for summary judgment as to all counts of the complaint, accompanied by a supporting memorandum. The third-party defendant, Medical Malpractice Joint Underwriting Association of Rhode Island, joined in the defendant's motion and also filed a memorandum in support of its position. Since the filing of the third-party defendant's memorandum, this Court has had occasion to grant the third-party defendant's motion for summary judgment. Plaintiffs filed an objection to the defendants' motion for summary judgment and likewise filed a supporting memorandum. After consideration of the extensive memoranda, exhibits and legal authorities filed by the parties, the parties' oral arguments and this Court's independent legal research, the pending motion is ripe for decision. The parties have agreed that the trial of this matter will be deferred pending this decision but will follow swiftly thereafter should the defendants' motion be denied.
 Summary Judgment Standard 
Our Supreme Court has warned repeatedly "that summary judgment is a drastic remedy that should be cautiously applied." Maggiacomo v.Stanley, 771 A.2d 896, 898 (R.I. 2001). Nevertheless, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as matter of law." R.I. Super.Ct.R.Civ.P. 56(c).
 Plaintiffs' Claims under the Rhode Island Wrongful Death Act 
The defendants contend that the claims asserted by plaintiffs under the Rhode Island Wrongful Death Act, R.I. Gen. Laws §§ 10-7-1 et seq. (counts I, II, and V of the complaint), are time barred since all personal causes of action that Rebecca Calderone could have asserted against the defendants were themselves time barred on the date of her death. The defendants argue that even assuming that the latest date of alleged "discovery of injury" is used to trigger the running of the statute of limitation as to the decedent's claims against the defendants (i.e., November of 1992 when Rebecca Calderone began seeing the social worker, Lynn Pasquale, to whom she ultimately made disclosure of the alleged abuse), and even further assuming that the longer seven year statute of limitation under R.I. Gen. Laws § 9-1-51 applies (i.e., the statute of limitation applicable to actions for the sexual abuse or exploitation of a child), as of November 1999 (some eight months before the filing of a complaint in this case), Rebecca Calderone's individual tort claims against the defendants would have been time barred. Indeed, as of Rebecca Calderone's death on December 21, 1999, she had not filed a claim against the defendants. Although the plaintiffs concede that Rebecca Calderone's individual claims against the defendants may have been time barred at the time of her death, they assert that their claims under the Rhode Island Wrongful Death Act remain viable because the Act allows her beneficiaries and estate to bring an action within three years from the date of her death, regardless of whether her claims would have been time barred as of that date. Thus, plaintiffs contend that they had until December 21, 2002 to file their wrongful death action such that their filing of the instant complaint on August 24, 2000 was timely.
To resolve these competing claims, this Court must examine the applicable statutory language and history of the Rhode Island Wrongful Death Act. The Rhode Island Supreme Court has oft repeated that "`under the common law no action for damages by reason of death by wrongful act could be maintained,'" Hall v. Knudsen, 535 A.2d 772, 774 (R.I. 1988) (citing Carrigan v. Cole, 35 R.I. 162, 165, 85 A. 934, 935 (1913))[2]. In response to this perceived phenomenon, the Rhode Island General Assembly, like the legislatures in most states, enacted the Rhode Island Wrongful Death Act, R.I. Gen. Laws §§ 10-7-1 et seq. (the "Act"). It modeled the statute after Lord Campbell's Act, 9 10 Vict., c. 93, which permitted a "right of action for wrongful death on behalf of a spouse, parent, or child of the decedent." Hall, 535 A.2d at 774. The legislature enacted the original Act for the benefit of the family, to compensate the widows and children of the decedent. Presley v. Newport Hospital,117 R.I. 177, 194, 365 A.2d 748 (1976). The legislature later amended the Act to further benefit the family, to allow for recovery for loss of consortium and to provide for any loss to creditors by reason of the decedent's death by allowing for recovery of damages on behalf of the decedent's estate. See R.I. Gen. Laws §§ 10-7-1.2 and 10-7-5 to 10-7-10.
Section 1 of the Act — which is the primary provision of the Rhode Island Wrongful Death Act at issue in this case — provides that:
 [w]henever the death of a person shall be caused by the wrongful act, neglect, or default of another, and the act, neglect, or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, the person who, or the corporation which, would have been liable if death had not ensued shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to a felony.
R.I. Gen. Laws § 10-7-1 (emphasis added.) Similar language appears in section 5 of the Act which governs claims under the Act by the decedent's estate. Id. §§ 10-7-5 and 10-7-10.
The Act further provides that "[e]xcept as otherwise provided, every action brought pursuant to this [Act] by the statutorily designed beneficiaries shall be commenced within three (3) years after the death of the person." R.I. Gen. Laws § 10-7-2. "With respect to any death caused by any wrongful act, neglect or default which is not known at the time of death, the action shall be commenced within three (3) years of the time that the wrongful act, neglect or default is discovered or, in the exercise of reasonable diligence, should have been discovered. Id. Similar language appears in section 7 of the Act which governs claims under the Act by the decedent's estate. Id. §§ 10-7-7 and 10-7-10.
In this case, the parties part company as to their respective interpretations of this statutory language. The defendants argue that the decedent's beneficiaries and estate have no action for wrongful death under the Act if the decedent would not have been able to "maintain an action in tort and recover damages in respect thereof" as against the defendant had death not occurred because such an action would have been time barred, as of the date of death, by the applicable statute of limitation. They contend, therefore, that the statute must be construed as creating a condition precedent to the bringing of a wrongful death action, namely the existence of a cause of action in tort against the defendant by the decedent at the time of death that would not have been time barred by the statute of limitation had death not occurred.
In contrast, the plaintiffs contend that, assuming that the decedent could have brought the substantive cause of action asserted by the statutory beneficiaries or estate under the Act had death not occurred, there is no further obligation that the decedent have had a viable personal injury cause of action against the defendant as of the date of death. They argue that the wrongful death cause of action is a new and independent cause of action under the Act that is subject only to the condition precedent that the nature and character of that cause of action be one that the decedent could have maintained had she or he lived. Plaintiffs maintain that the only statute of limitation relevant to a wrongful death action is the three year statute of limitation contained in the Act that runs from the date of death.
These competing claims require this Court to construe the language of the Act that is at issue. Under settled precepts of statutory interpretation, when a statute is clear and unambiguous, the Court must interpret the statute literally and give the words of the statute their plain and ordinary meaning. Sindelar v. Leguia, 750 A.2d 967 (R.I. 2000). Where ambiguity renders construction of a statute necessary, the primary object of the Court is to ascertain the legislative intention from a consideration of the legislation in its entirety, keeping in mind its nature, purpose and all of its provisions. LaPlante v. Honda NorthAmerica, Inc., 697 A.2d 625 (R.I. 1997). No sentence, clause or word should be construed as unmeaning or surplusage if construction can be legitimately found that will give force to and preserve all words of a statute. Faraone v. City of East Providence, 935 F. Supp. 82 (D.R.I. 1996); Brennan v. Kirby, 529 A.2d 633 (R.I. 1987). A statute may not be construed in a manner that leads to an unjust, absurd or unreasonable result. Bogosian v. Woloohojian, 93 F. Supp.2d 145 (D.R.I. 2000); City ofWarwick v. Almac's, Inc., 442 A.2d 1265 (R.I. 1982). Legislation that is in derogation of the common law is subject to strict construction.Bandoni v. State, 715 A.2d 580 (R.I. 1998). Yet, where a statute is remedial, one which affords a remedy or improves or facilitates remedies already existing for the enforcement of rights or redress of wrongs, the statute is to be construed liberally. Ayers-Schaffner v. Solomon,461 A.2d 396 (R.I. 1983).
In interpreting the statute at issue, it is evident from its express language that the "act, neglect or default" of the defendant must be one "such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof." R.I. Gen. Laws §§ 10-7-2 and 10-7-5. The plain language of those provisions focus on the character of the defendant's act underlying the cause of action and the decedent's injury and requires only that such tortious act be one for which the decedent could have maintained a cause of action and recovered damages under the law had death not ensued. So construed, it matters not whether the decedent's action against the defendant would have been time barred as of the date of death but only whether the nature of the cause of action for damages asserted by the decedent's statutory beneficiaries is one that the decedent could have maintained against the defendant had death not occurred. The plain language of the statute, therefore, appears to support the plaintiffs' argument as to how the Act should be interpreted.
Moreover, this interpretation is supported by cases decided by the Rhode Island Supreme Court since the enactment of the Act in the late 1800's. Although the Supreme Court has never been presented with the statute of limitation question presented in this case, it has been called upon in several cases to interpret the disputed "such as would" language of the Act. "Through the years [the Supreme Court] has ruled that the remedies provided by the Wrongful Death Act were available only if the injured party could have maintained suit for damages if his death had notensued." Presley v. Newport Hospital, 117 R.I. 177, 194, 365 A.2d 748, 757 (1976) (emphasis added) (citations omitted). According to the Supreme Court, "the legislative intent . . . requires a condition precedent; the action depends completely upon the decedent's right to sue for his own injuries at the time of his death, and the wrongful-death action can be maintained only if the decedent would have been able to maintain an action if death had not ensued." Hall v. Knudsen, 535 A.2d 772, 775 (R.I. 1988) (emphasis added).
In interpreting and applying that language, however, the Rhode Island Supreme Court has focused on whether the decedent's cause of action against the defendant would have been barred substantively at the time of death had death not ensued. See Hall v. Knudsen, 535 A.2d 775 (R.I. 1988) (holding that a prior recovery by a decedent in a personal injury action and a release by the decedent of the tortfeasor will bar recovery by the decedent's heirs in a wrongful death action predicated on the same injury that otherwise could result in a double recovery); Castellucci v.Castellucci, 96 R.I. 34, 188 A.2d 467 (1963) (holding that because the common law doctrine of interspousal immunity barred a married women from suing her spouse for negligence, her children had no wrongful death action against their father even if his negligence caused their mother's death); National India Rubber Co. v. Kilroe, 54 R.I. 333, 173 A. 86
(1934) (wrongful death action against an employer barred where the decedent died during the course of his employment because the decedent's own cause of action against the employer would have been barred by the exclusivity provisions of the Workers' Compensation Act); Gorman v.Budlong, 23 R.I. 169, 49 A. 704 (1901) (holding that a wrongful death action arising out of the death of a fetus was barred where the fetus had no substantive right at that time to sue for injuries sustained en ventresa mere); Miller v. Coffin, 19 R.I. 164, 36 A. 6 (1895) (a wrongful death action was precluded where the decedent-employee had no substantive legal right at the time to recover against a fellow servant); Neilson v.Brown, 13 R.I. 651 (1882) (wrongful death action barred where wife had no substantive right to sue for being enticed away from her husband).
A statute of limitation defense, however, does not challenge the merits of the decedent's underlying cause of action. See Frongillo v. Grimmett,788 P.2d 102 (Ariz. App. 1990). In contrast, statutes of limitation deny the right to recovery, but do not extinguish substantive rights. Id. Consistent with the plain language of the Act, therefore, as interpreted by the Rhode Island Supreme Court, the statute of limitation applicable to a decedent's cause of action against the tortfeasor cannot prevent a decedent's statutory beneficiaries or estate from bringing a wrongful death action against that tortfeasor, even if the decedent's own action against that tortfeastor would have been time barred as of the date of death, as long as the nature of the cause of action is one that the decedent would have been permitted to bring for his or her own benefit without the possibility of a duplicative recovery or revival of a cause of action previously dismissed or subject to release by the decedent. SeeNeilson v. Brown, 13 R.I. 651 (1882) and its progeny; Hall v. Knudsen,
535 A.2d 775 (R.I. 1988).
This interpretation of the Act is likewise supported by a recent seminal case decided by the New Jersey Supreme Court that construed language of the New Jersey wrongful death statute that is identical to the language of the Rhode Island statute. See Miller v. Sperling,766 A.2d 738 (N.J. 2001) (construing N.J. Stat. Ann. § 3A:31-1). InMiller, the Court overturned years of precedent and refused to dismiss a wrongful death action arising out of alleged pharmacological malpractice even though the decedent's own action arising out of the same alleged negligence would have been time barred as of the date of death. In construing the New Jersey statute, the Court stated:
 The critical `such as would' language . . . indicates a legislative intent merely to use the personal injury cause of action as an example of the types of injuries compensable under the Act. That language pertains to the character of the injury, rather than requiring a viable personal injury cause of action as a prerequisite to maintaining a wrongful death claim.
Id. at 382.
Similarly, the Arizona Court of Appeals has stated that the phrase "if death had not ensued" is "merely descriptive of the nature of the wrong committed to determine if a cause of action exists as a matter of substantive law for the alleged wrongful conduct, not whether that cause of action has been lost by untimely filing." Frongillo v. Grimmet,788 P.2d 102, 103 (Ariz.Ct.App. 1989), review denied, 1990 Ariz. LEXIS 50 (Ariz. Mar. 20, 1990). The interpretation of similar statutory language by these courts comports with the plain language of the Rhode Island Act as interpreted historically by the Rhode Island Supreme Court.
Furthermore, even if the disputed language of the Act were deemed to be ambiguous and thus subject to statutory construction, the notion of construing the Act as not requiring the decedent to have had a timely action as of the date of death for the wrongful death act claim to go forward finds support in the broader language of the Act and in its history and purpose. At its inception, the Act created an entirely new and independent cause of action. Short v. Flynn, 374 A.2d 787 (R.I. 1977); Tillinghast v. Reed, 70 R.I. 259 (R.I. 1943); National IndiaRubber Co. v. Kilroe, 54 R.I. 333, 173 A. 86 (1934); Slavin v. HellenicBaking Co., 50 R.I. 217, 146 A. 488 (1929); McFaddin v. Rankin,46 R.I. 475, 129 A. 267 (1925); Carrigan v. Cole, 35 R.I. 162, 85 A. 93 (1913).
In creating a new independent cause of action for wrongful death, the Rhode Island Wrongful Death Act differs from statutes in many other states. It did not create a wrongful death action (through a survival statute or otherwise) that is derivative of the decedent's own cause of action against the tortfeasor, but instead created a new cause of action independent of the decedent's own cause of action. See Speiser, WrongfulDeath and Injury, § 1:13 at n. 19 and n. 20 (1999) (collecting cases where states interpret their wrongful death acts as creating new causes of action and cases where states interpret their acts as derivative of the decedent's cause of action); see also Short v. Flynn, 374 A.2d 787
(R.I. 1977) (holding that the Rhode Island Wrongful Death Act created an entirely new right of action); Lubrano v. Atlantic Mills, 19 R.I. 129,32 A. 205 (1895) (determining that, under the Act, the decedent's cause of action against the tortfeasor did not survive the decedent's death (pursuant to the state's survival statute or otherwise) but that a new right of recovery was given to the decedent's designated heirs in substitution for the right of action which the deceased would have had if he had survived).
The Act thus stands in contrast to the language of the statutes at issue in Russell v. Ingersoll-Rand Co., 841 S.W.2d 343 (Tex. 1992) — the seminal case upon which the defendants seek to rely in support of their interpretation of the Act. In Texas, unlike Rhode Island, the right to bring a wrongful death claim is "entirely derivative of the decedent's right to have sued for his or her own injuries prior to his death." Russell, 841 S.W.2d at 347.
This distinction is important. As the Rhode Island Wrongful Death Act creates a new and independent cause of action for wrongful death that is not derivative of the decedent's own cause of action, the statute of limitation applicable to that cause of action necessarily must be the explicit limitation provision contained in the Act and not the statute of limitation that would have been applicable to the decedent's own cause of action. To suggest otherwise would directly conflict with the Rhode Island Supreme Court's holding in Nascimento v. Phillips Petroleum Co.,et al., 115 R.I. 395 (1975). In that case, the Supreme Court ruled that the statute of limitation contained in the Act, R.I. Gen. Laws §10-7-2, and not the statute of limitation applicable to personal injury actions, R.I. Gen. Laws § 9-1-14, applies to an action for wrongful death under the Act.
Moreover, the provisions of the Act expressly grant the statutory beneficiaries and the estate under the Act three years from the death of the decedent to bring their respective causes of action under the Act.See R.I. Gen. Laws §§ 10-7-2 and 10-7-7. In addition, the "discovery rules" codified in R.I. Gen. Laws §§ 10-7-2 and 10-7-7 focus on the knowledge of the beneficiaries and the estate and provide them with three years in which to file suit from the time that they discover or should discover the defendants' wrongful act.
By their terms, these provisions apply to all wrongful death act claims, not simply to those claims for which the decedent's cause of action had not yet expired as of the date of death. The defendants' interpretation of the "such as would" language of the Act, therefore, would "subvert that explicit language, as a plaintiff would only have [three] years from the date of injury [or reasonable discovery of injury] in which to file suit." Miller, at 382. It would render those provisions mere surplusage in many situations. Under that type of construction, a wrongful death claim (which is distinct and independent of the decedent's own cause of action) could effectively be time barred before the death itself.
Although this Court must give words in a statute their plain and ordinary meanings, in so doing it must not construe a "statute in a way that would result in `absurdities or would defeat the underlying purpose of the enactment.'" Commercial Union Ins. Co. v. Pelchat, 727 A.2d 676, 681 (R.I. 1999) (citing Falstaff, 637 A.2d at 1050; quoting Brennan, 529 A.2d at 637; Labbadia v. State, 513 A.2d 18, 22 (R.I. 1986)). Barring a wrongful death claim before a cause of action for wrongful death even exists would lead to an absurd result.
Moreover, the Act should be read in light of its history and purpose. The legislature enacted the statute to fill the void that existed by the perceived absence of a wrongful death action at common law. See n. 2,supra. It designed the Act to benefit the family members of the deceased who suffered harm as a proximate result of the wrongful death of the decedent. Presley v. Newport Hospital, 117 R.I. 177, 180, 194, 365 A.2d 748
(1976). The avowed purpose of the Act, therefore, was clearly remedial — to provide recompense to certain statutorily designated beneficiaries who prior thereto had no right to recover damages arising out of the wrongful death of the decedent. See Speiser, Wrongful Deathand Injury, § 1:13 (1999).
It appears appropriate to this Court, therefore, that the Rhode Island Wrongful Death Act not be strictly construed in a manner that would eliminate a wrongful death action for the benefit of the very statutory beneficiaries and creditors that the legislature considered so important to provide for upon the death of the decedent due to the tortious conduct of a defendant — especially in circumstances where the decedent would have had such a substantive cause of action at the time of death but had not yet sued, released or recovered from that defendant. To that extent, it is appropriate to construe the Act in a manner that will further its remedial purposes by not prematurely cutting off the very remedy of which the decedent was deprived and which the legislature sought to grant to certain statutory beneficiaries and the estate in the absence of such a remedy being pursued or recovered by the decedent. See
n. 2, supra.
Furthermore, this Court's interpretation of the Act in this regard is in line with courts in other jurisdictions:
 the considerable majority of courts have held that the statute runs against the death action only from the date of death, even though at that time the decedent's own action would have been barred while [she] was living. Only a few courts hold that it runs from the time of the original injury, and consequently that the death action may be lost before it has ever accrued.
Prosser and Keeton on Torts, § 127 at 957 (5th ed. 1984) (footnotes omitted.) Although there appears to be contrary authority in other jurisdictions as to whether death actions are barred when the statute of limitations has passed on the decedent's underlying personal injury claim,[3] "in the great majority of jurisdictions which have considered this question, the limitation period applicable to a cause of action for wrongful death — whether contained in the statute creating the cause of action (as in Rhode Island) or in the general statutes of limitation — begins to run from the date of death." See Miller v.Sperling, 766 A.2d 738 (N.J. 2001) (citing Speiser, Wrongful Death andInjury, § 11:10 (1999)).[4]
Noted commentators also endorse this view, as Prosser indicates:
 [i]t is not at all clear . . . that such provisions of the death acts ever were intended to prevent recovery where the deceased once had a cause of action, but it has terminated before his death. The more reasonable interpretation would seem to be that they are directed at the necessity of some original tort on the part of the defendant, under circumstances giving rise to liability in the first instance, rather than to subsequent changes in the situation affecting only the interest of the decedent.
 Prosser and Keeton, supra, at 957. Additionally, the Restatement (Second) of Torts § 899 (1979) provides that:
 [a] cause of action for death is complete when death occurs. Under most wrongful death statutes, the cause of action is a new and independent one, accruing to the representative or to surviving relatives of the decedent only upon his death; and since the cause of action does not come into existence until the death, it is not barred by prior lapse of time, even though the decedent's own cause of action for the injuries resulting in death would be barred . . . .
The clear trend, therefore, as evidenced by the New Jersey Supreme Court's reversal of past precedent in Miller and these commentators, is to interpret statutes such as the Rhode Island Wrongful Death Act as not conditioning a wrongful death action on the viability, on statute of limitation grounds, of the decedent's underlying cause of action against the tortfeasor at the time of death, but as expressly dictating the limitation periods applicable to all wrongful death claims that accrue upon death.
Although the Rhode Island Supreme Court has not directly addressed this particular issue, it has previously determined that "the limitation for bringing [an action under the Wrongful Death Act] is controlled by [R.I. Gen. Laws] § 10-7-2." Nascimento v. Phillips Petroleum Co., et al.,115 R.I. 395, (1975). If the limitation period is controlled by the express statute of limitation contained in the Act itself, as stated by the Supreme Court in Nascimento, it would be incongruous to suggest, as do the defendants, that the limitation period applicable to the decedent's own cause of action is the one that should apply as well to the wrongful death action by his or her beneficiaries or estate after the decedent's death. Indeed, the Rhode Island Supreme Court alluded to the absurdity, and potential unconstitutionality, of extinguishing a remedy before a cause of action exists in Kennedy v. Cumberland EngineeringCo., Inc., 471 A.2d 195 (R.I. 1984). The Supreme Court, quoting Judge Frank's dissent in Dincher v. Marlin Firearms Co., 198 F.2d 821, 823 (2d Cir. 1952), "condemned the `Alice in Wonderland' effect" of this result:
 [e]xcept in topsy-turvy land, you can't die before you are conceived, or be divorced before ever you marry, or harvest a crop never planted, or burn down a house never built, or miss a train running on a non-existent railroad. For substantially similar reasons, it has always heretofore been accepted, as a sort of logical "axiom," that a statute of limitations does not begin to run against a cause of action before that cause of action exists, i.e., before a judicial remedy is available to a plaintiff.
Kennedy, supra, 471 A.2d at 201 (quoting Dincher v. Marlin Firearms Co.,198 F.2d 821, 823 (2d Cir. 1952)).[5]
This Court finds, therefore, that even assuming that a decedent's cause of action against a tortfeasor was time barred as of the date of the decedent's death, none of the claims against the tortfeasor by the decedent's statutory beneficiaries and estate for wrongful death under the Rhode Island Wrongful Death Act are barred as a matter of law. Instead, those claims are subject to the express three year statutes of limitation or tolling provisions for wrongful death claims contained in the Act. As such, there is no legal bar in this case to the plaintiffs asserting causes of action against the defendants under the Act for causing the wrongful death of Rebecca Calderone, even though her causes of action against the defendants for their alleged tortious conduct may have been time barred as of the date of her death.
In reaching this result, this Court acknowledges that such a construction of the Rhode Island Wrongful Death Act may not always serve the important purposes of protecting defendants from the prolonged fear of litigation and preventing stale claims. See Turner v. Mercy Hospitalsand Health Services of Detroit, 533 N.W.2d 365, 367 (Mich. 1995). Yet this Court's interpretation of the Act will fulfill another purpose behind statutes of limitation — to ensure that plaintiffs have sufficient opportunity to bring suit. Id. It also will satisfy the larger purpose behind the Act — to ensure that the hardships associated with a death by wrongful act fall not on the injured party or his or her heirs and creditors but on the tortfeastor responsible for such injury. An injured party should not be required to initiate a lawsuit while suffering or dying simply to protect the right of his or her family to later sue for wrongful death should the injured party die without receiving his or her just reward.
As plaintiffs' claims here were filed within the three year statutes of limitation applicable to such claims under the Rhode Island Wrongful Death Act, R.I. Gen. Laws §§ 10-7-1 et seq., they are not legally barred. "The plaintiff[s] should have [their] day in court to show whether [they are] entitled to relief. The question of whether [they] will prevail [which of necessity may be affected by any delay with respect to the decedent's underlying cause of action] must await a hearing on the merits in a court of proper jurisdiction." Kennedy,supra, 471 A.2d at 201. Accordingly, this Court denies the defendants' motion for summary judgment as to all of the plaintiffs' claims asserted pursuant to the Act that are contained in counts I, II, and V of the complaint.
 Fraud Claims 
Plaintiffs George and Joan Sanzi allege that Dr. Shetty fraudulently concealed his assaults upon their daughter, Rebecca Calderone, and fraudulently represented to them that the changes in Rebecca's behavior were due to a neurological disorder and/or her medication. They allege "economic harm and severe emotional distress with physical symptoms." They contend that they first became aware of Dr. Shetty's fraudulent conduct when they accompanied their daughter to see an attorney on February 7, 1996 and she disclosed the alleged abuse. If this contention is accepted as true, by viewing the allegations of the complaint in a light most favorable to the plaintiffs, the applicable statute of limitation would begin to run on the Sanzis' fraud claims on February 8, 1996. See R.I. Gen. Laws § 43-3-13 ("[w]henever time is to be reckoned from any day, date, or act done, or the time of any act done, the day, date, or the day when the act is done shall not be included in the computation"); R.I. Super.Ct.R.Civ.P. 6(a).
The defendants contend that plaintiffs' fraud claims are governed by the three year statute of limitation applicable to personal injury actions such that they are time barred. They rely on the Rhode Island Supreme Court's decision in Martin v. Howard, 784 A.2d 291 (R.I. 2001), to support their position. In Martin, the Supreme Court found that where a plaintiff's claim for fraud was "wholly derived from" her own personal injury claim, the three year statute of limitation applicable to personal injury actions governed.
The plaintiffs counter that their fraud claims are governed not by the three year statute of limitation applicable to personal injury actions but by the catch-all ten year statute of limitation such that their claims were timely filed. Plaintiffs argue that, under Martin, their claims are not "wholly derived" from their own personal injury claims.
In this Court's view, plaintiffs' fraud claims are clearly distinguishable from the claims at issue in Martin. Here, the Sanzis' fraud claims are not wholly derived from any personal injury claims that they assert. Their fraud claims are the only claims that they assert individually against the defendants. With regard to their fraud claims, they seek to recover not only damages for emotional distress but also damages for economic harm that they claim they suffered as a proximate result of the defendants' alleged intentional misconduct toward them in fraudulently concealing Dr. Shetty's alleged assaults upon their daughter and fraudulently misrepresenting the cause of her behavioral changes. As such, the general statute of limitation for fraud in Rhode Island of ten years governs the Sanzis' fraud action and prevents it from being time barred. See Bourdon's Inc. v. Ecin Industries Inc., 704 A.2d 747 (R.I. 1997) (holding that the general ten year statute of limitation period in R.I. Gen. Laws § 9-1-13(a) applies to actions for fraud or deceit).
Moreover, the Rhode Island Supreme Court has held consistently that the "discovery rule" applies to fraud claims. See Jones v. Moretti,711 A.2d 1156 (R.I. 1998) (ten year statute of limitation governing fraud claim tolled until plaintiff learned of the fraudulent misrepresentations); Peck v. Bank of America, 16 R.I. 710, 715 (1890) ("in cases of fraud, the statute of limitations begins to run, not at the time the fraud is perpetrated, but from the time of its discovery"). Here, accepting plaintiffs' allegation that they did not discover the fraud allegedly perpetrated by defendants until February 7, 1996 when they accompanied their daughter to see an attorney, the ten year statute would not have begun to run until that day. The Sanzis filed this fraud action on August 24, 2000, which is well within the ten year statute of limitation. The defendants' motion for summary judgment is therefore denied as well as to the fraud claims asserted by plaintiffs George and Joan Sanzi in count IV of the complaint.
 Conclusion 
Accordingly, the defendants' motion for summary judgment is denied in its entirety as to all pending counts of plaintiffs' complaint. Counsel shall confer and agree upon an appropriate form of order, reflective of this Court's decision, and submit it to the Court forthwith for entry.
[1] The defendants also moved for summary judgment as to count III of the complaint, by which plaintiffs George and Joan Sanzi, the decedent's parents, asserted causes of action against defendant Dr. Shetty for intentional infliction of emotional distress upon them. Those parties have stipulated, however, that count III of the complaint may be dismissed with prejudice, thereby obviating this Court's consideration of that count.
[2] This characterization of the common law as not providing for a wrongful death action has been stated in many state law decisions across the nation. It is not at all clear, however, that an action for wrongful death was not available at common law. See Speiser, Wrongful Death andInjury §§ 1:1 to 1:9 (3rd ed. 1992); Meagher v. Electrolux Corp.,388 F. Supp. 1009 (D.Mass. 1975) (holding that a Massachusetts common law right of action exists for wrongful death). It may follow, therefore, that the general precept adopted by many courts that a wrongful death statute — being in derogation of the common law — should be strictly construed may not be premised on an accurate notion as to the state of the common law at the time of enactment of the wrongful death statute. If the statute is not in derogation of the common law and otherwise reflects a remedial purpose, query why such a statute should be strictly, as opposed to liberally, construed. Cf. Simeone v. Charron,762 A.2d 442, 445 (R.I. 2001) (holding that the Act is in derogation of the common law and therefore should be strictly construed) with State v.Amaro, 448 A.2d 1257, 1259 (1982) ("§ 10-7-1, the wrongful death statute construed in Presley [v. Newport Hospital, 117 R.I. 177,365 A.2d 748 (1976)], was remedial in nature, and was thus properly subject to a liberal application.); see Speiser, supra, at § 1:12.
[3] See Nelson v. American Red Cross, et al., 26 F.3d 193 (D.C. Cir. 1994) (interpreting D.C. Code § 16-2701 (1981) and holding that since the decedent's cause of action was time barred at his death, the wrongful death claim was likewise time barred); Quattlebaum v. Carey Canada Inc.,et al., 685 F. Supp. 939 (D.S.C. 1988) (holding that the language of S.C. Code 1976 § 15-51-10 establishes a condition precedent to the right to bring a wrongful death claim which can only be maintained if the decedent could have maintained such an action); Russell v. Ingersoll-RandCo., 841 S.W.2d 343 (Tex. 1992) (holding that a wrongful death action is derivative of the decedent's cause of action and is barred if the decedent's cause of action would have been barred as of the date of death had death not ensued); Miller v. Luther, M.D., et al., 489 N.W.2d 651
(Wis.Ct.App. 1992) (pursuant to WIS. STAT. ANN. § 895.03 (2001) an action for death is barred if, at the time of the decedent's death, the applicable statute of limitations had run against the decedent's action);Ogden v. Berry, 572 A.2d 1082 (Me 1990) (interpreting Me.Rev.Stat.Ann. 18-A § 2-804 and finding that the decedent's inaction in allowing the malpractice period of limitation to expire during his lifetime barred the derivative wrongful death claim).
[4] See also Richardson v. Knud Hansen Mem'l Hosp., 744 F.2d 1007, 1011 (3rd Cir. 1984) (applying Virgin Islands law to hold "that the accrual date for the action is the date of death," not the date of injury); Iidav. Allied Signal, Inc., 854 F. Supp. 702, 712 (D.Hawaii 1994) (holding that a wrongful death action that was brought within two years of date of decedent's death from asbestosis but more than two years after he was diagnosed with the disease accrued as of the date of death of decedent rather than at the time of injury); Frongillo v. Grimmett, 788 P.2d 102, 103 (1989) ("the statute [of limitation] runs against the death action only from the date of death, even though at that time the decedent's own action would have been barred while he was living"); Bregant v. Fink,724 S.W.2d 337, 338 (Mo.Ct.App. 1987) ("[A]n action for a death resulting from malpractice is a wrongful death action, not a malpractice action."); Krowicki v. St. Elizabeth Hosp., 494 N.Y.S.2d 590, 591 (N.Y.App. Div. 1985) (holding that action for wrongful death was governed by two year period of limitation for commencement of wrongful death actions, and not by the two and one half year period applying to medical malpractice actions, notwithstanding fact that death allegedly resulted from medical malpractice); Farmers Bank and Trust Co. v. Rice,674 S.W.2d 510, 512 (Ky. 1984) ("[T]he statute of limitation for wrongful death actions runs from the death of the decedent, even though there was no viable action for personal injury or medical negligence or malpractice at the time of death."); Hart v. Eldridge, 299 S.E.2d 560, 561 (1983) ("statute of limitations for a wrongful death action emanating from medical malpractice begins to run from the date of death, not from the date of the negligent act or omission of the practitioner"); Chapman v.Cardiac Pacemakers Inc., 673 P.2d 385, 386-87 (1983) (certified question from federal district court) ("[T]he law is clear that a cause of action for wrongful death accrues on the death of the injured party, and not before. This is so because the cause of action did not accrue to the decedent . . . . The cause of action which accrues to an injured person during his lifetime is altogether separate from the cause of action accruing to the person's heirs should he [or she] die of that injury.");Ness v. St. Aloisius Hospital, 301 N.W.2d 647, 652-53 (N.D. 1981) (holding that medical malpractice statute of limitations is not applicable in wrongful death actions, even though wrongful death action is based upon medical malpractice); Shaughnessy v. Spray, 637 P.2d 182, 187 (1981) ("[T]he wrongful death statute's limitation period applies to all wrongful death actions and the tort limitation period which would have been germane if death had not resulted does not apply.").
[5] "A federal court, grappling with this same problem, refused to bar a death claim under the Federal Tort Claims Act even though the statute of limitations on the underlying injury action had expired. A holding to the contrary, the appeals court concluded, would promote inequity and supplant lawyers with fortunetellers: To hold that a claim for wrongful death somehow accrues before the date of death would place the class protected by the statute in the legally untenable position of speculating about hypothetical or potential future injuries, for the damages awarded survivors under the wrongful death act, which include funeral and burial expenses, are not identical with those available in a personal injury action to the one actually injured, and remain indeterminate until death has occurred. Clearly no such claim would ever be justiciable even were an astucious plaintiff to lodge such a clairvoyant complaint, for courts simply cannot protect rights against `assumed potential invasions'. . . until they are presented with an actual case or controversy." Russell v.Ingersoll-Rand Co., 841 S.W.2d 343 (Tex. 1992) (dissent) (quoting Fiskv. United States, 657 F.2d 167, 171 (7th Cir. 1981) (citations omitted)).